This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                          **No. 31,865**

**DANIEL MARES,**

Defendant-Appellant,

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Michael E. Vigil, District Judge**

Gary K. King, Attorney General
Becca Salwin, Assistant Attorney General
Santa Fe, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Mary Barket, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**FRY, Judge.**

{1}    In this appeal, Defendant challenges the application of habitual offender enhancements to his sentence following a violation of his probation. Defendant raises three issues. He first argues that the district court violated his right to due process in imposing the enhancements because Defendant reasonably believed that his maximum term of incarceration under his plea agreement was sixteen-and-a-half years. Second, Defendant argues that the district court lost jurisdiction to apply the enhancements to portions of his sentence that he contends he fully served prior to the imposition of the enhancements. Finally, Defendant argues that he should be resentenced because the district court erroneously believed that it was required to impose the habitual offender enhancements consecutively. On the first two points, we conclude that pursuant to the terms of the plea agreement, the district court properly imposed the habitual offender enhancements following Defendant's violation of his probation, and we accordingly affirm. However, because the district court erroneously believed it did not have discretion to run Defendant's enhancements concurrently, we agree with Defendant on the third point and remand to the district court for resentencing.

**BACKGROUND**

{2}    At the center of this dispute are the terms of Defendant's plea agreement. We therefore begin by briefly setting out the facts and the undisputed portions of the plea

agreement and reserve further discussion of the disputed terms of the agreement for our analysis.

{3}    Defendant was originally indicted in two separate cases but agreed to consolidate the cases for the purpose of plea bargaining.  In Santa Fe cause number D-101-CR-2004-00442 (No. 442), Defendant was indicted on three counts of conspiracy to commit burglary.  In Santa Fe cause number D-101-CR-2004-00511 (No. 511), Defendant was indicted for burglary, larceny, possession of a controlled substance, and resisting an officer.  Defendant ultimately agreed to plead guilty to burglary, two counts of conspiracy to commit burglary, larceny, and resisting an officer.  Defendant also agreed to admit that he was previously convicted of five felonies and that he would not "contest their validity if [h]abitual [o]ffender [p]roceedings should be instituted against [him]."  In exchange, the State agreed that it would dismiss the remaining charges and only pursue the enhancement of one of Defendant's new felonies for a maximum of sixteen-and-a-half years less one day of incarceration.

{4}    At sentencing, the district court suspended a portion of Defendant's sentence, leaving Defendant with ten years of incarceration and five years of probation.  With the application of good time credits, Defendant subsequently served five years of incarceration. Within seven months of his release, however, Defendant was arrested

for battery on a household member, battery on a police officer, and resisting an officer. Following a motion by the State, the district court revoked Defendant's probation and enhanced his sentence by twenty-four years. Defendant appeals.

**Defendant's Due Process Rights Were Not Violated by the Enhancements**

{5} Defendant argues that the district court enhanced his sentence in contravention of the plea agreement. Defendant contends that under the terms of the plea agreement, the maximum amount of incarceration he reasonably understood he was agreeing to was sixteen-and-a-half years, not an additional twenty-four years in the event that he violated probation and the State sought sentence enhancements.

{6} "A plea agreement is a unique form of contract[,] the terms of which must be interpreted, understood, and approved by the trial court." *State v. Orquiz*, 2003-NMCA-089, ¶ 7, 134 N.M. 157, 74 P.3d 91 (internal quotation marks and citation omitted); *see* Rule 5-304 NMRA. "Upon review, we construe the terms of the plea agreement according to what [the defendant] reasonably understood when he entered the plea." *Orquiz*, 2003-NMCA-089, ¶ 7.

{7} As noted above, Defendant agreed to plead guilty to four felonies (and one misdemeanor) in exchange for the State dismissing the remaining charges and only pursuing an enhancement on one of Defendant's new felonies, for a total maximum

exposure of sixteen-and-a-half years. Immediately following these concessions, however, the plea agreement then stated:

> *This agreement applies to initial sentencing only.* If . . . [D]efendant violates the terms of this agreement, probation or parole, the State reserves the right to ask for incarceration for any time remaining on the original sentence, including filing additional [h]abitual [o]ffender proceedings, which could add an additional eight (8) years to each of the other three new felonies.

(Emphasis added.) The agreement further provided:

> In the event . . . Defendant violates any municipal, county, state, or [f]ederal law of any jurisdiction after entry of this plea, or in any way violates any of the conditions of any probation or parole to which he may be or become subject after entry of this agreement, the State may and will file additional [h]abitual [o]ffender [p]roceedings against . . . Defendant, and may and will use . . . Defendant's admission of his identity on the prior felony convictions in such [h]abitual [o]ffender [p]roceedings, regardless of whether probation or parole is revoked as a result of such violation.

While Defendant is correct that the agreement does not explicitly state that he would be exposed to an additional twenty-four years should he violate his probation, these two provisions, when read together, clearly indicate that the State would pursue the habitual offender enhancements it agreed to hold in reserve at initial sentencing if Defendant subsequently violated his probation. And the agreement provided further that should habitual offender proceedings be initiated as a result of Defendant's violating his probation, those proceedings could result in eight-year enhancements on three separate offenses. Thus, although the agreement did not specifically calculate

the math, Defendant's bare assertion that he could not have reasonably understood that he would be exposed to a twenty-four-year sentence enhancement is unpersuasive. *See State v. Leyba*, 2009-NMCA-030, ¶ 20, 145 N.M. 712, 204 P.3d 37 ("Defendants do not get to choose which part of a plea bargain to follow; plea agreements are generally viewed and enforced in their entirety.").

**{8}** To the extent that Defendant further argues that the district court's alleged failure to alert him to his maximum sentencing exposure in the event of a probation violation rendered his plea involuntary, we conclude that such arguments are inconsistent with the remedy Defendant requested below and now seeks on appeal. Defendant has consistently argued that the district court's enhancement of his sentence did not conform to his interpretation of the plea agreement. He has therefore sought to require the district court to *enforce* the plea agreement as he alleges to have understood it, i.e., as prohibiting application of the enhancements; he has not sought withdrawal of the agreement. Defendant did not attempt to withdraw his plea below, and, in fact, he argued that the State should be prevented from attempting to withdraw the plea. Therefore, we reject Defendant's argument. *Cf. State v. Garcia*, 1996-NMSC-013, ¶¶ 23-24, 121 N.M. 544, 915 P.2d 300 (stating that "[f]ailure to advise a defendant of the potential penalties . . . renders the plea unknowing and involuntary" and indicating that the proper remedy is to remand and allow the defendant to

6

withdraw the plea). The plain language of the plea agreement indicates that Defendant agreed that a violation of probation would potentially expose him to eight-year sentence enhancements for each of the three previously unenhanced sentences.

**The District Court Retained Jurisdiction To Enhance Defendant's Sentence**

{9} Defendant argues that he fully served his sentence on one of the underlying convictions, Count II in No. 442, before the district court imposed the habitual offender enhancements and that the district court therefore lost jurisdiction to enhance that conviction. More specifically, we understand Defendant's argument to be that certain amounts of time he served on probation corresponded to specific underlying convictions such that he developed a reasonable expectation of finality in his sentence on Count II while serving his overall five-year term of probation. Defendant's argument, however, is not supported by our case law, his plea agreement, or the district court's judgment and sentence. Accordingly, we conclude that because Defendant violated the terms of his probation and agreed that a violation of probation could result in the State pursuing additional sentence enhancements, Defendant had no reasonable expectation of finality in his sentence, and the district court properly retained jurisdiction to enhance his sentence.

{10} "[T]he jurisdiction of a trial court to enhance a felony sentence under the habitual offender statute expires once a defendant has completed service of that

sentence." *State v. Lovato*, 2007-NMCA-049, ¶ 6, 141 N.M. 508, 157 P.3d 73. "This jurisdictional limitation is founded upon principles of double jeopardy: once a sentence has been served, a defendant's punishment for the crime has come to end." *Id.* (internal quotation marks and citation omitted). Thus, "[f]urther punishment for that crime under any enhancement provision would violate the prohibition on double jeopardy." *State v. Roybal*, 1995-NMCA-097, ¶ 8, 120 N.M. 507, 903 P.2d 249.

{11}    Double jeopardy concerns are only implicated, however, if the defendant has an objectively reasonable expectation of finality in the sentence. *State v. Redhouse*, 2011-NMCA-118, ¶ 10, 269 P.3d 8 ("Increasing a defendant's sentence after a defendant begins serving the sentence implicates double jeopardy concerns if a defendant's objectively reasonable expectations of finality in the original sentencing proceedings are violated."). Therefore, in order to establish that the district court was stripped of jurisdiction to impose the enhancement, Defendant must establish two things: "(1) [the Defendant] must have had an expectation of finality in his original sentence; and (2) that expectation must have been reasonable." *State v. Trujillo*, 2007-NMSC-017, ¶ 11, 141 N.M. 451, 157 P.3d 16.

{12}    A defendant does not have a reasonable expectation of finality in a sentence while serving probation for the underlying conviction. *See State v. Villalobos*, 1998-NMSC-036, ¶ 12, 126 N.M. 255, 968 P.2d 766; *see also State v. Freed*, 1996-NMCA-

8

044, ¶ 8, 121 N.M. 569, 915 P.2d 325 ("The prosecutor may seek [a habitual offender] enhancement at any time following conviction, as long as the sentence enhancement is imposed before the defendant finishes serving the term of incarceration and any parole or probation that may follow that term."). In this case, Defendant agreed to a mandatory sentence range of eight to sixteen-and-a-half years. The district court subsequently suspended six-and-a-half years of the sentence, leaving Defendant ten years of incarceration, and ordered Defendant to serve five years of supervised probation. Although Defendant argues that portions of his probationary term could become fragmented and attach to specific underlying convictions such that Count II could become fully served before Defendant completed the full probationary term, neither the plea agreement nor the judgment and sentence provided for such an outcome. Instead, Defendant was granted a single five-year probationary term and agreed that any violation of his probation could result in the district court imposing habitual enhancements against the three remaining felonies. *See Freed*, 1996-NMCA-044, ¶ 11 (rejecting the defendant's argument that he had a reasonable expectation of finality in a sentence where "[h]e signed a plea agreement that specifically and clearly informed him that if he violated the conditions of his probation, he would be subject to [additional enhancements]").

**{13}** Defendant argues that notwithstanding his plea agreement, this Court's decision in *Lovato* necessitates the conclusion that he had a reasonable expectation of finality in Count II. *See* 2007-NMCA-049, ¶ 1. Contrary to Defendant's assertion, *Lovato* is inapplicable to the case before us. In *Lovato*, the defendant's sentence was structured in such a way that his term of parole ran concurrently with his term of incarceration on a second felony. *Id.* ¶ 2. However, the defendant was not adjudged guilty of violating his parole until *after* his term of parole on the first felony had ended but while he was still incarcerated on the second felony. *Id.* ¶ 3. Accordingly, this Court held that he had a reasonable expectation of finality in the sentence for his first felony and that the district court lost jurisdiction to enhance that sentence. *Id.* ¶ 12.

**{14}** That is not what occurred here. As stated above, neither the plea agreement nor the judgment and sentence structured Defendant's sentence such that time served on probation corresponded to specific underlying convictions. *Cf. Lovato*, 2007-NMCA-049, ¶ 10 ("[A] defendant's reasonable expectation of finality in a sentence for double jeopardy purposes encompasses not only its length, but the manner in which the sentence is structured."). Instead, Defendant was given a single period of probation and agreed that if he violated his probation, each of the three remaining felonies could be enhanced. Therefore, the district court properly concluded that it retained

jurisdiction to enhance Count II when Defendant violated his probation. *See State v. Sanchez,* 2001-NMCA-060, ¶ 23, 130 N.M. 602, 28 P.3d 1143.

**The District Court May Consider Whether Defendant's Sentence Enhancements Should Be Served Consecutively or Concurrently**

{15}     Defendant argues that the district court erred in imposing the sentence enhancements consecutively based on its belief that because the underlying sentences were consecutive it was required to apply the enhancements consecutively as well. The State concedes that this issue should be remanded to the district court for the court to consider whether Defendant's sentence enhancements should run concurrently or consecutively. While we are not bound by the State's concessions, *State v. Caldwell*, 2008-NMCA-049, ¶ 8, 143 N.M. 792, 182 P.3d 775, after reviewing the relevant authorities, we conclude that remand is proper on this issue. *See State v. Triggs*, 2012-NMCA-068, ¶ 23, 281 P.3d 1256 (holding that in the absence of case law, a statute, or a provision in a plea agreement requiring otherwise, the district court retained discretion to run the sentence enhancements concurrently or consecutively).

**CONCLUSION**

{16}     For the foregoing reasons, we affirm the district court's enhancement of Defendant's convictions but remand to the district court to determine whether the enhancements should run consecutively or concurrently.

{17}     **IT IS SO ORDERED.**

11

_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

**LINDA M. VANZI, Judge**

_____

**M. MONICA ZAMORA, Judge**